My name is Clifton Kotz, I represent the state of South Dakota. The South Dakota Constitution gives the people the power to propose constitutional amendments and to propose initiated measures. Since 1972, our state constitution has required proposed constitutional amendments to be filed with the Secretary of State's office at least one year prior to the general election on which that matters to appear on the ballot. And since 2010, our state law has required proposed initiated measures to be filed with the Secretary of State at least one year prior to the general election ballot that that measure is to appear on the ballot. Circulators in our state have one year with which to gather the required number of signatures. Circulators have no geographic limitations in South Dakota where they can circulate those signatures. There's no restriction on the number of petitions containing different subjects that qualified electors can sign. The South Dakota filing deadline does not dictate who can speak, and the filing deadline does not regulate the content of the circulator's speech. MR. BOUTROUS Counsel, what connection does the one-year or the printing deadlines, given the factual finding by the district court that the state was always able to meet the six-month deadline previously? MR. BOUTROUS The – can you repeat your question, Your  I'm sorry. MR. BOUTROUS Yeah. What connection does the one-year deadline have to either the verification process or the ballot printing deadlines, given that the district court made a factual finding that the state was always able to meet the old six-month deadline? MR. BOUTROUS I know that there is a significant connection between that one-year filing deadline and the Secretary of State's certifying those measures to be on the ballot or verifying the signatures. MR. BOUTROUS So what is the important state interest that's furthered by a one-year deadline so far out from the election? MR. BOUTROUS The important state interest, Your Honor, is that the one-year deadline will give our legislature an attempt, or at least to be able to look at any proposed initiated measures or constitutional amendments that may, for example, affect our state budget. As the situation is right now, the filing deadline happens in November. The ballot or that measure or ballot wouldn't be certified until after the legislature convened that same year of the deadline. And so there's no intervening legislative session on which our legislatures can take a look to see if there's anything they need to discuss regarding that, to see if there's anything regarding something that might affect our budget. And so I think that's the important compelling government state interest for that one-year deadline. MR. BOUTROUS Well, I think there are certain rules that apply, or buckling principles, apply to the length of time of submission, as opposed to the length of time to circulate and gather expression. MR. BOUTROUS Yes, Your Honor. MR. BOUTROUS Our thirst and morale ruminates on it, speculates, seems to say that it is. But that was upholding a preliminary injunction. That's not law. MR. BOUTROUS In Buckley, the six-month deadline was...  BOUTROUS That was six months to circulate. MR. BOUTROUS Six months, which to file the petition, I believe, Your Honor. They had six months to circulate it and file that particular petition. In South Dakota, they have a year to circulate it. And then the filing has to occur within that year, just like Buckley. If the First Amendment rights are in the circulation process, then that means the First Amendment considerations for the time to submit a circulated petition. That's a very different First Amendment question. And it's been litigated with regard to independent parties and third parties getting on the ballot. And I can understand that. But when it's an initiative process, and the parties aren't affected, I don't understand how the time to get, the time of submission, I mean, I understand how it affects the interest of people who want to get things on the ballot. But that's not the First Amendment interest that Buckley is protecting. MR. In those case, most of those election law cases, anyways, has to deal with the individual candidates being able to compete with each other to get on the same ballot. MR. I don't think so. MR. Your Honor. MR. Yeah, well, see, this is what's so confusing about this area. I don't think that has anything to do with the speech involved in the petitioning, in the gathering of petitions. The communication between the parties soliciting the signature and the prospective voter who wants to sign on, that has nothing to do with the competition among candidates and so forth. MR. Well, Your Honor, when you're circulating a petition to get on the ballot, I don't believe there is a First Amendment right associated with that. MR. Right. So why is there a right, why is there a right, that since there's no right to get it on the ballot, but there is a right to not have a deadline you don't like? MR. I'm not understanding your question, Your Honor. MR. Well, I'm not understanding where the parties are in this case. There's an assumption here, and I guess it's driven in part by the way the district court approached the question, that of course the time of submission is of equal First Amendment significance to the time prior to that for the circulation process. And that's not Buckley. That's going beyond Buckley in a way that other than with respect to independent parties and candidates, I don't think the court has gone there. MR. Look at how they argued in Kerrigan about whether the fact of voting, a legislator voting, sure it's expressive, but is it First Amendment protective? They didn't all agree with that. MR. And I don't think what this court has found is noted that the difficulty of the process alone is insufficient to implicate the First Amendment. MR. Are you talking, Thurston? MR. I'm talking to Roblin. MR. Well, you've used the word finding, and that's another thing that bothers me. Your opposing counsel said in its brief that the Buckley factors, we review the district court's determination of the Buckley factors, primarily burden and state interest, for clear error. And your reply brief agreed with that. In my view, that's dead wrong. Justice Ginsburg in Buckley said toward the end, in upholding the Tenth Circuit's ruling, we conclude that there was adequate state interest. The word conclude is magical. It means it's an issue of law. The court rarely, if it's not a fighting issue in the Supreme Court, they rarely tell us. They rarely address the standard of abuse explicitly. But when they, for instance, in the word seizure, where my first year's on the court, we had to decide whether seizure is a question of law or fact. And every time I look through all the Supreme Court seizure opinions, they never discussed it. They always use the word conclude. We conclude there was a seizure. We didn't find there was a seizure. And that, so, it seems to me that has a tremendous impact on our review in this case. The district court didn't make any findings. It made, well, you made a reference to the state has never, or Judge Graz made a reference to states always, the district court found the states always was able to comply. Yes, that may be an underlying finding. But I wish counsel would address this standard review question. There is, I think, one out-of-circuit district court case cited in the red brief for this proposition, which had nothing to do with the assertion. And your reply brief simply went along, oh, yeah, it's clear error review. Where'd you get that? Well, in your honor, I, you know, I'm I don't, I use the word you. I'm not, I don't mean the person, it's not personal, obviously. A brief is a collective exercise. You know, right now I'm looking at it differently than I probably did when I had that brief. And I've examined other case law that didn't come before me then. And on that Dubrovni, I can't pronounce the name that good. In that matter, the court found, again, that only when there's no severe restriction on speech, only a rational basis review is required. And our law requiring that one-year filing deadline does not restrict any speech. It does not restrict who the individuals can communicate with. They're not competing on a ballot like candidates compete with each other. There's no limit on the number of ballot measures that can be placed on the ballot. As opposed to some of those election case laws where they found that those candidates are directly competing with each other. So when there's an early deadline on those ballot access cases for someone like an independent candidate, they're not able to then compete with those major party candidates because some of the issues haven't even been decided yet. So they're struggling even just to get their name on the ballot. So when Judge Graz asked you about the state interest, your response was the ability to have sort of an intervening legislative session, right? Yes, sir. So my two questions. One is, are there any other state interests? And the other is, can you give me an example? I'm having a hard time understanding why that's significant. What the legislature can do that matters that much. Well, so I'll take that last part of your question, Your Honor. For example, Medicaid expansion. That could really affect the state budget in South Dakota. We're a small state and we don't have an extensive budget. If that were to pass and the legislature is not prepared for that to pass, it could significantly hamper other budgets within the state or state agencies. Some of the other compelling state interests would be, you know, it gives the Secretary of State time to certify those ballot measures. I believe there was testimony during the trial that the Secretary of State had to hire additional people to help certify some ballot measures. So it saves on administrative costs also. But that one didn't seem to hold much water with the district court. I think as Judge Grass pointed out, there was a finding of some sort, whether it be law or fact, that these were getting done previously within a six-month deadline. And they were, and so there was a lot of ballot measures that came before, I think, that the legislature looked at and figured out that, yeah, we need to probably do something here because some of these measures could affect our budget. So then they changed the deadline, Your Honor. That's, you know, so it's been in effect since 2010 and since 1972 for proposed constitutional memos. And I think that's probably why, you know, I don't have any reasoning other than that. And that's why they went to the one-year requirement for initiated measures also. Counsel, I wanted to ask you about the remedy that the district court came up with. And that was it reimposed a six-month deadline. And I guess I'm troubled by the court just making that deadline up. So I'd like to know if the deadline was simply invalidated, what would be the state of the law? Couldn't the legislature make up its own deadline that complied with our opinion if we were to affirm the district court rather than having the courts impose a judicially created deadline? Yes, Your Honor. I think imposing that deadline may not have been within the court's authority. What would be the state of the law? Would there just be no deadline at all and the legislature would need to step in and make one? Yeah, there would have been no deadline then. If you declared that as he did, that that one-year filing deadline did not comport with the Constitution, there had been no deadline. So our legislature would have had to step in. They would have had to call a special session or something to get a law enacted to try to comply with the judge's ruling. What about the constitutional aspect? The part that the district court did not interrupt, but S.D. Voice says we should impose the same remedy. How would that then be cured? Yeah, that would have probably not been cured because the constitutional amendments have to be submitted to the voters of South Dakota. So if the legislature would have came up with a deadline for that particular, for the constitutional amendment, that would have been submitted to the voters for their approval, too. Why does, if the constitutional amendment, I assume the plaintiffs are just looking for it to be invalidated, period. And if it's gone, why can't, can the legislature then impose a legislative deadline on the submission of constitutional amendment petitions? Or is there something else in the Constitution that requires the Constitution to regulate that? The Constitution, South Dakota's Constitution does regulate the ballot or the proposed constitutional amendment. So there's provision in the South Dakota Constitution that requires proposed constitutional amendments that are submitted to the voters, whether a legislature tries to enact a constitutional amendment or the citizens want to propose their own constitutional amendment. And then that Constitution, the requirement of the one-year deadline, Your Honor. So then what would the effect be? Somebody, so S.T. Boyce can come in the day before the election and put a constitutional amendment? Now I'm assuming their cross-appeal prevails. Yeah. So, I mean, if that constitutional amendment was invalidated by the circuit court judge, then, I mean, the only way to correct that would be by the legislature then convening to try to correct it. So what happens in the next election? What happens next month? We did it tomorrow. And so I'm not following your question, Your Honor. What happens with the... Well, there is now no time. There is now no time limit in the Constitution for the submission of petitions to amend the Constitution. Correct. So tomorrow we grant the cross-appeal and on Friday, S.T. Boyce goes in with, they've quietly gathered the requisite signatures with a constitutional amendment. Does it have to be on the ballot in November? Well, counsel, wouldn't they have had to submit the text of the amendment and the names of the sponsors one year prior? Yes, Your Honor. For the constitutional amendment, that's still required by state law that it had been submitted. That wasn't, that isn't part of their cross-appeal. Their cross-appeal was regarding the constitutional amendment. The constitutional provisions requiring the one-year filing deadline. And they say that should also equally apply to that, those constitutional amendments as it does with the initiated measures, Your Honor. And so I stand by that I don't think there's anything required by the U.S. Constitution that's, or federal law that says ballot circulators have a right to circulate those petitions. That's a state-created right. I'm sorry, I didn't reserve any rebuttal time. Or can I stop it? I'm going to stop it right here, Your Honor, just in case, unless there's any further questions. Thank you. Mr. Leach? Thank you, Your Honor, and may it please the Court. Its appeal and cross-appeal present a single question. South Dakota bans petition circulation and signature 12 months before an election. This is nine months before the Secretary of State must count the signatures to determine whether there are sufficient signatures, a process which takes only two days. I start with where's the First Amendment interest in the deadline to submit a completed petition where the process, circulation process that is protected has been completed? Sure, and I'll start, I'll address that, Your Honor. Right now, as we know, the right to petition for a redress of grievances is among the most precious of American liberties. Well, counsel, that's very different than the right to an initiative petition. Those are two different rights. There's no constitutional right to an initiative process. No, that's true. But once the state grants it, the state must abide by the First Amendment. And the First Amendment is all about petitioning the government for a redress of grievances. And so once you have that petition process in place, the government must abide by the First Amendment. And we have the Thurston case from this court in 2020, which talks about an early filing deadline for the Libertarian Party being unconstitutional. It was not a merits decision. I understand, Your Honor. Well, it's not, it's briefed like it was. I understand, Your Honor. And we also have, for example, Anderson versus Celebrezzi in 1983, where it's a third party presidential candidate. And Ohio has a deadline, I think, in March. And in footnote 12, the U.S. Supreme Court addresses this and it says, Ohio's argument is that there have already been five third party presidential candidates who qualified. And so what's the reason we should allow a sixth to be on the ballot after our deadline? And the U.S. Supreme Court says, it doesn't matter that you've had five qualify. We have to apply constitutional law to the deadline that you're using to exclude the sixth. And we find your interest is not sufficient. So the sixth one is entitled to be on the ballot. So that's an example. We also find it in the Buckley case, where Buckley, the state of Colorado argued, and this is addressed in footnote three in Buckley. State of Colorado argued that since 1910, we've had the fourth most initiatives qualify for the ballot of any state in the country. So how can there be a problem with our laws being too restrictive? And in footnote three in Buckley. Is this the Supreme Court or the lower court? U.S. Supreme Court, Your Honor. I'm looking at it. It's not what footnote three says and what I'm looking at. 525 U.S. Then I mixed it up with footnote 12, Your Honor. Footnote three celebrates the footnote 12 in Buckley. Footnote 12 in Buckley says, yes, you've had all these initiatives qualify, but we still have to apply constitutional law to determine whether the restrictions that you currently impose are constitutional or not. Because you may well have had more initiatives, but for the unconstitutional requirement or but for the allegedly unconstitutional requirement. And that holding is exactly consistent with Citizens United, where Chief Justice Roberts says it is our law and our tradition that more speech rather than less is favored. So simply because there have been some qualified, we still have to apply the law to the restrictions. And here we apply exacting scrutiny. Exacting scrutiny has two critical elements. I'm sorry, Your Honor. That's controversial. You just say we apply exacting scrutiny. It's not at all clear. No, I agree, Your Honor. All right. I mean, you start out saying we only got one question here. And this is the third or fourth question that we've now, rocks that we've now looked under. Very well, Your Honor. With respect to the level of scrutiny. True. Go back to your point. I just. Well, I want to talk about the level of scrutiny and you're correct. It could be strict scrutiny. That's not. Clearly should be a sliding scale, frankly. It could be a sliding. Because the court says that these all depend on the intensity of the competing interests. Yes. The level of scrutiny depends, is fact dependent. Yes, Your Honor. And I think under. The lawyers just say, oh, it's strict. No, it's exacting. No, it's rational basis. Yes. This is arguing without comprehension of the precedent. And I argued in my brief for strict scrutiny. But it doesn't matter because under strict or exact, the result is the same. How about rational basis? I don't think rational basis applies, Your Honor, under Calzone and even more recently under Bonta from the U.S. Supreme Court, because under Bonta from 2021 from the U.S. Supreme Court, a critical case. And is it in your brief? Absolutely, Your Honor. And I'm going to talk about it in just a second. But in Calzone, this court says exacting scrutiny requires a substantial relationship between the challenged law and a sufficiently important government interest. And then in Bonta in 2021, Chief Justice Roberts, for the majority, adds a second requirement to exacting scrutiny. And Chief Justice Roberts writes, this is crucial. He says it's crucial that the law be narrowly tailored to the allegedly sufficient important government interest. And Chief Justice Roberts tells us why he writes that it's crucial. He writes that it's crucial because First Amendment freedoms need breathing space to survive. So you take those two elements of Bonta and you apply them here and you've got petition circulation and signature cut off 12 months before the election for no good reason. Now, the state, to its credit, I believe, abandoned, as I heard its argument, it abandoned this argument that the two days the Secretary of State needs to count the ballots justifies the 12-month in advance requirement. You're saying that was abandoned this morning? That's what I heard, Your Honor. No, nothing is abandoned in oral argument. Very well, Your Honor. The state argued that the critical state interest is it needs this legislative session before the vote, for example, on Medicaid expansion. And there is no such interest because no one knows yet whether Medicaid expansion will pass. There's nothing for the legislature to do. What South Dakota law provides is that any initiative or constitutional amendment that's enacted in November goes into effect July 1st of the following year. The legislature meets from January, February, March. So if Medicaid expansion or any other law is enacted in November, the legislature meets January, February, March. It can do whatever needs to be done to make that implementation work as smoothly as possible. Counsel, how does that relate to the district court's finding that, quote, nothing in the record even suggests that the one-year requirement lends anything of value to the state? All I can say is that's true. I think it's exactly right. There is nothing in the record and six months, as the district court wrote, gives the state more than adequate time to do the work that must be done. So turning now to the, I'm sorry, Your Honor. So how does this provision, this one-year period of time, how does that impair S.D. Voice's speech rights? Because within one year of the election, S.D. Voice cannot engage in the core political speech, core political interactive speech of circulating petitions to obtain signatures on. Wait a minute, wait a minute. So you're now saying that the circulation process continues after the I thought you got it, you had an earlier one year for the circulation. The one-year deadline is a deadline beyond which circulation may not occur. Only because you have to have it finished. You have to have it finished. You have to have your signatures in place. Yes, that's the deal. Doesn't mean you can't keep communicating with proponents and opponents and the voting population about it. Speech continues. Yes, but the core political speech of obtaining a signature on a petition to redress grievances cannot occur after 12 months before an election, and that's the critical failure here. Well, it could occur. It just wouldn't be effective. It wouldn't mean anything. Exactly. But you can still go out and obtain signatures and say, when this comes up on the ballot, make sure you vote for it. Well, you could. That would not be the same as a petition process. I thought your argument was different than that. I thought your argument was that people simply aren't interested more than one year before the election. That's part of our argument. And that, well, okay. And my understanding of the evidence of that is a little bit of testimony from Mr. Heidelberg, I think was his name. Yes, sir. That's it. Is that the only evidence there is of that? That's the evidence. Because the argument you were just making doesn't make a lot of sense to me. As Judge Logan pointed out, you can advertise, you can do all kinds of speech after the gathering of signatures is over. You can even gather signatures if you want, doesn't have any meaning. You need to do a complied by the one year. So give me a better idea of how your speech is being impaired by this one year deadline. The state restricts core political speech because no petitions, no signatures that are effective to put a petition on the ballot may be obtained. You just stated the conclusion, you gave a limited definition that's wrong in my view of what the core political speech is. Just let me, I was going to ask it a little different way. This was a bench trial, right? Yes, sir. And there was no additional evidence after our remand. That's correct. So the district court's opinion has to be based upon the evidence at the bench trial. True. Even though it reads like the court's own view of based on its opinions and knowledge and experience with the legislative process. So my question is, where do I go in the bench trial record for all of the evidence that you submitted on the impact issue that Judge Grunder is asking about? Yes, it's very short and it is in Mr. Heidelberger's testimony. 56, 57, 58, 59 are the pages. And you're right, it was limited to one witness, but it's undisputed. The state has had the chance to call witnesses. They didn't dispute anything. You know, you're back to clearly erroneous. Doesn't matter if it's undisputed. Is it adequate for the district court and our court with Danoble review to that it meets the constitutional standard established by Buckley? Yes, it is adequate, Your Honor. But see, I don't see that analysis by the district court. So the district court just leaves me in a vacuum. Well, that's what I think is our core responsibility here. I think that's what Judge Graz referred to when he referred to the district court's finding. But that isn't a finding. Well, he says there's nothing in the record that even suggests the one-year requirement lends anything of value to the state. But he doesn't analyze what Judge Grunders asked you. What was the adverse impact? And what you've answered didn't satisfy him and it doesn't satisfy me. Well, I haven't read Mr. Heidelberger, but in four pages, I doubt that there's much there other than rumination and an opinion, political science opinion. Well, what, of course, what Mr. Heidelberger says is consistent with what other courts have said about early election deadlines and what this... Most of it is just political science rumination by judges. And it isn't litigation analysis. Well, I think what we do know to put it down to the most fundamental terms is the right to speak and the First Amendment extends to petition circulation. And this law both... But isn't it a consensus Supreme Court view that there is a presumption of validity and you have a high bar to clear to prove the kind of impact, First Amendment adverse impact that's needed? Well, when I looked at Calzone and I realized I realized you descended in that case, Your Honor, but I'm sorry. When I look at Calzone and when I look at Bonta, no, I don't think it's it's all that high a burden when the state chooses to limit speech. Then exacting scrutiny applies, particularly where we have core interactive political speech. But how how exactly is it limiting speech? That's you can continue to get signatures if you want. You can circulate. They may not mean anything in terms of whether it gets on the ballot, but you can do it. Well, it's it's exactly what you're saying. It's meaningful versus meaningless speech. Counsel, hasn't the Supreme Court, in fact, addressed the right to effectiveness of the speech? I believe so, Your Honor. Counsel, in the interest of time, I'd like to turn to the constitutional amendment. Thank you. I have a little bit different question here. So the district court stated that under the South Dakota Constitution, that would be Article 23, a petition containing the amendment sponsors and the required number of signatures must be filed one year prior to the election. That's in the district court's opinion. But that's not what the text of the South Dakota Constitution says. The text requires three things be filed one year out. The text of the proposed amendments, the names of the sponsors and the addresses of the sponsors. I'm not aware of any South Dakota Supreme Court opinion construing that as including a one year deadline for the signatures. And so as a matter of constitutional avoidance, why shouldn't this court construe Article 23 as it's written and without this constitutionally questionable one year deadline? I'm not sure what deadline you would construe other than... Well, the text says you've got to submit three things one year in advance. The text of the amendment, the names of the sponsors and the addresses of the sponsors doesn't say anything about the signatures. Yet the district court read that into the Constitution. Is there any South Dakota case that says that? There's no case, but the second sentence of that provision of the Constitution, Article 23, Section 1 says an amendment proposed by initiative shall require a petition signed by qualified voters equal in number to at least 10 percent. Correct. That's the number of signatures. It's not the deadline. It says it shall be, the petition shall be filed at least one year. Well, read the whole sentence. Before the next general election at which the proposed amendment is submitted to the voters. Well, read the entire provision. It doesn't say the petition. It says the text of the proposed amendment. Yes, it says the petition containing the text of the proposed amendment. Right. That's different than 43,000 signatures. So as a matter of constitutional avoidance, why would we read a deadline into that provision when we don't need to? Well, if I read it that way, I'd have to agree with you, but I just don't read it that way. Is there any South Dakota precedent saying that? No, there isn't, Your Honor. And yet the district court read it in there. Well, everyone so far has read it that way until this morning, Your Honor. And I would, in my remaining 50 seconds, I would like to simply address as quickly as I can this constitutional issue. And the district court gave three reasons. First, he said the stakes are higher, so it deserves a different result. First, the amendment applies in the marketplace of ideas, no matter whether the stakes are high or low. Second, he wrote that constitutional — But the balancing changes. I don't know about that, Your Honor. Well, the State's interest could be different. The State's interest certainly could be different. He also says constitutional amendments are less likely to concern matters that are politically in vogue. That's just incorrect. If you look in 2020, we had an initiative on legalizing recreational marijuana. This year, 2022, expanding Medicaid. 2024, the Secretary of State's website will tell you that there will be an initiative on abortion if enough signatures are gathered. I see my time is up. I thank you for your time and attention, Your Honors. Thank you. Thank you. I'll give you one minute for rebuttal. Thank you, Your Honor. I believe I'm just going to rely on — 1.51. Yes, my apologies. I'm just going to rely on what we discussed earlier, unless the court has any further questions. Very good. Thank you. Thank you. Well, thank you, counsel, for a thorough briefing and a helpful argument. It's a complex case with lots of uncertain issues in it. Despite everyone's attempt to reduce it to one easy one that I win, we'll take it under advisement.